IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LEON and KIMBERLY TAYLOR, Brother and Sister, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. CIV-21-15-C |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed the present action asserting claims for breach of contract and bad faith, arguing that Defendant failed to evaluate their claim properly and reasonably and timely make payments under the homeowners policy insuring their home. Defendant has filed a Motion for Summary Judgment, arguing that it is entitled to judgment on Plaintiffs' claims for breach contract and for breach of the duty of good faith and fair dealing.

The following facts are undisputed: On June 8, 2019, Plaintiffs' home was damaged by a storm. Plaintiffs reported the damage to Defendant the next day. On June 12, 2019, Defendant's Claims Specialist along with Plaintiff Kimberly Taylor inspected the home. On June 25, 2019, Defendant determined the cost to repair the home would be $34,497.84 ($23,693.81 for the home and $10,804.03 for an extension to the home). Defendant then tendered $27,307.47 to Plaintiffs for the

actual cash value of the estimated repairs. Defendant advised Plaintiffs there may be additional benefits available once the repairs were completed. On July 3, 2019, Ms. Taylor informed Defendant there were approximately 25 content items which were damaged. On July 31, 2019, Plaintiffs' contractor Yates Construction submitted to Defendant a bid of $49,510.68 to repair the property. Defendant's Claims Specialist contacted Yates to attempt to reconcile the differences between the repair estimates. On September 9, 2019, Ms. Taylor notified Defendant she had retained public adjustor Coppermark. Defendant's Claims Specialist attempted, without success, to contact Coppermark five times during September and October of 2019. On October 23, 2019, Coppermark inspected the property. On November 20, 2019, Coppermark submitted a Sworn Statement of Loss demanding policy limits of $245,750, which included $73,725 in personal property loss. This demand did not include an estimate of the proposed scope of work, nor attach any identification of personal property allegedly lost. Defendant attempted without success to obtain support for Coppermark's demand. On December 26, 2019, Defendant hired the engineering firm EFI Global to provide an engineering opinion on the differing opinions about the scope of repairs. On February 26, 2020, Defendant sent Plaintiffs another check in the amount of $47,615.36. This amount was based on an updated determination of $128,919.41 for replacement of the

dwelling. On April 14, 2020, Defendant sent Plaintiffs an additional check in the amount of $6,413.65. This check was based on revisions to the determination of which coverage to which certain damages should be assigned. At that time and through the end of May 2020 Defendant inquired of Coppermark if Plaintiffs were going to rebuild the home. Finally, on June 22, 2020, Yates sent Defendant a single-page document outlining a bid of $158,961.17 to demolish and rebuild half of the structure. Beginning on July 21, 2020, and continuing through September 22, 2020, Defendant requested Yates and/or Coppermark to reconcile the differences between Defendant's determination and Yates' bid. On September 30, 2020, Coppermark sent Defendant a letter demanding it accept Yates' bid. On October 20, 2020, Defendant responded to Coppermark outlining the amounts that had been paid to Plaintiffs and explaining that under the terms of the policy, certain information must be provided before any additional policy benefits could be paid. This litigation soon followed.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence

of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). The burden is not an onerous one for the nonmoving party in each case but does not at any point shift from the nonmovant to the district court. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

Plaintiffs argue Defendant breached the contract between them by failing to timely and properly investigate the claim. However, the undisputed facts show Plaintiffs cannot demonstrate Defendant failed to timely act as required by the policy. As set forth above, the undisputed facts reveal that Defendant sent an adjustor to the property three days after the claim was made and that first payment under the policy was made thirteen days after that inspection. As they are entitled to do, Plaintiffs disagreed with Defendant's valuation and retained a company, Yates, to prepare their own estimate. As the Yates estimate exceeded that of Defendant, Defendant attempted to reconcile the differences. From that point until the lawsuit was filed, it is clear that any delay in conducting additional inspections, retaining an engineering firm, or making additional policy payments was due to lack of cooperation from Plaintiffs and/or their agents, rather than any delay on the part of Defendant. As the Oklahoma Supreme Court noted in First Bank of Turley v. Fidelity & Deposit Insurance Co. of Maryland, 1996 OK 105, 928 P.2d 298, 308 n.37, "Most insurance policies contain provisions requiring the insured to 'cooperate' with the insurer in the investigation of any claim under the policy. Failure to do so gives rise to a contract defense . . . ." As Defendant's Undisputed Material Fact No. 8 states, the policy applicable in this case requires Plaintiffs to

provide "specifications of any damaged structure and detailed estimates for repair of the damage" within "60 days after the loss." (Dkt. No. 39, p. 8.) Plaintiffs admit this fact is undisputed. Plaintiffs argue that due to various executive orders related to the COVID-19 pandemic, the 60-day period was extended. Assuming, without deciding, Plaintiffs are correct, as Defendant notes in its Reply, more than 60 days expired with no action by Plaintiffs after the emergency orders expired. The undisputed facts show that Defendant made payments of policy benefits based on its evaluation of the damage. To the extent Plaintiffs disagreed and sought additional policy benefits, the policy required Plaintiffs to submit a detailed estimate of the loss. Plaintiffs failed to comply with this requirement. As a result, Plaintiffs cannot demonstrate Defendant breached the contract.

Plaintiffs also argue that Defendant breached the contract by refusing to pay replacement cost benefits ("RCB") or Coverage B benefits. As Defendant notes, RCB benefits are not payable until the property has been repaired. Those repairs were not completed until August 24, 2021. The policy requires any repairs to be completed within two years of the date of loss. Further, even if the failure to meet the deadline were overlooked, to date Plaintiffs have failed to submit the detailed information necessary to reconcile the differences between Defendant's estimate of the cost and Plaintiffs' estimate. Thus, no breach based on a failure to pay RCB

can be shown. As for Coverage B benefits, Plaintiffs have admitted that they did not submit an explanation of the property lost until August 24, 2021. Even then the property list was included in response to a Request for Production in this litigation. The undisputed facts demonstrate Defendant requested the list at least seven times, with no response from Plaintiffs. Under these facts, Plaintiffs cannot show Defendant breached the contract by not paying Coverage B benefits.

Because Plaintiffs cannot show Defendant breached the contract, they cannot establish their bad faith claim. See Davis v. GHS Health Maint. Org., Inc., 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210 (" [A] determination of liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract.").

## CONCLUSION

For the reasons set forth more fully herein, Defendant's Motion for Summary Judgment (Dkt. No. 39) is GRANTED. Because the Court has determined Defendant is entitled to Judgment, Defendant's Motion to Exclude the Opinion and Testimony of Plaintiffs' Expert Wayne Schwartz (Dkt. No. 41) is STRICKEN as MOOT. A separate judgment will issue.

IT IS SO ORDERED this 5th day of May 2022.

ROBIN J. CAUTHRON
United States District Judge